CASE 97—EQUITY—OCTOBER 1,. 1881.

# Biggs, &c., v. Lexington and Big Sandy Railroad Company.

### APPEAL FROM BOYD CIRCUIT COURT.

1. Where a deed does not contain any warranty of quantity, the remedy of a grantee for a deficit is based on an implied assumpsit of the grantor to refund the money paid by mistake.

2. An assignment of the warranties in a deed which does not contain any warranty of *quantity* does not carry with it the cause of action on the implied promise of the original vendor to render compensation for a deficit in the quantity of land.

3. Such an action is barred by the lapse of five years from the discovery of the mistake as to quantity, if payment was made before that event.

4. Where a suit is instituted to settle a decedent's estate, and the creditors, as provided by section 436 of the Code, are enjoined from suing on their demands except in that proceeding, the time of the continuance of the injunction is not to be excluded in estimating the period limited for the commencement of an action by a creditor, as the injunction does not stay his action, but only prescribes where and how he shall proceed.

E. F. DULIN FOR APPELLANTS.

1. The cause of action for a deficit in the land was not assigned to appellee, nor could it have been assigned so as to enable appellee to sue without joining the assignors.

2. If appellee ever had any right of action, it is barred by limitation. (Gen. Stat., chap. 71, art. 3, sec. 2.)

3. So much of the land conveyed by Biggs as was in the adverse possession of others should have been deducted, as the contract to that extent was void. (Wash v. McBrayer, 1 Dana, 565; Redman, &c., v. Sanders, &c., 2 Dana, 70; Rust v. Larue, 4 Littell, 413; Thompson v. Warren, 8 B. M., 490; Graves v. Leathers, 17 B. M., 668 and 669; Crawley v. Vaughn, 11 Bush, 521.)

WM. LINDSAY FOR APPELLANTS.

1. The action is for the recovery of money paid by mistake, and is barred by the lapse of five years from the act of payment, unless the defendant shows that the mistake was discovered within five years before the commencement of the action. (Crane v. Prather, 4 J. J. Mar.,

Biggs, &c., v. Lexington and Big Sandy Railroad Company.

76; Dye v. Holland, 4 Bush, 635; Carneal v. Perkins' adm'r, 7 J. J. Mar., 455; Field v. Wilson, 6 B. Mon., 481; Ellis v. Kelso, 18 B. Mon., 301.)

2. The assignment to appellee of the warranties in Biggs' deed did not carry with it the right of action for the alleged deficit.

3. When Hartman and Coleman abandoned the action they left appellee without a right of action, and when they came back into court they, in effect, commenced a new action. (Dudley v. Price's adm'r, 10 B. Mon., 88; Clarkson v. Morgan, 6 B. Mon., 451; Stone v. Connelly, 1 Met., 656.)

4. There can be no relief on account of the deficit, as the use in the deed of the expression "supposed to contain 3,700 acres, be it more or less," is evidence that the parties intended to risk a gain or loss. (Young v. Craig, 2 Bibb, 271; McCoun v. Delaney, 3 Bibb, 46; Harrison v. Talbott, 2 Dana, 266; Brown v. Parish, 2 Dana, 6.)

L. T. MOORE AND W. H. WADSWORTH FOR APPELLEE.

1. The assignment of error that "the judgment rendered is erroneous," is too general to be considered. (Sec. 756, Civil Code; O'Reagan v. O'Sullivan, 14 Bush, 184.)

2. The action is not barred by limitation, as the statute run against claims of creditors after suit was instituted by the administrator and the injunction obtained. (Revised Statutes, 2 Stanton, p. 134; Daniels' Chancery Practice, vol. 1, 4th ed., 641–644, and notes.)

3. The action was instituted in five years after the discovery of the mistake, and appellee being the real party in interest, the dismissal of Coleman and Hartman from the action did not cause the statute to commence running again.

4. For so gross a deficiency in the quantity of land conveyed equity will relieve. (Harrison v. Talbott, 2 Dana, 258, and cases cited; Lewis v. Burton, MS. Opin., January 6th, 1877; Fall v. McMurdy, 3 Met., 365.)

IRELAND & HAMPTON FOR APPELLEE.

Filed a petition for rehearing.

1. The statute of limitations does not apply to any claim of a creditor of a deceased person not barred at the institution of suit by the administrator to settle the estate. (Daniels' Chancery Practice, p. 644, at top, and notes; Angell on Limitations, sec. 167; Wickliffe v. Lexington, 11 B. Mon., 161; L. L. F. & M. Ins. Co. v. Page, 17 B. M., 446; Clay v. Clay, 7 Bush, 98; Talbott v. Todd, 5 Dana, 199; Pilkington's ex'x v. Gaunt's adm'x, 5 Dana, 410; Kane v. Bloodgood, 7 Johnson Ch'y Reports, 106.)

2. Limitation only bars the right of a party to bring an action, and does not bar his right to present his claim in an action by a personal representative to settle his decedent's estate. (Stanton's Revised Stat.,

vol. 2, pp. 126 and 132; Myers' Code, secs. 33, 65, 465, 467, and 731; Graves v. Graves, 2 Bibb, 207; Chiles v. Calk, 4 Bibb, 454.)

3. Appellee's claim is based upon a covenant in writing, and not upon an implied promise, and therefore the limitation of five years does apply.

4. Appellee is the real party in interest, and was not affected by the discontinuance of the action as to Coleman and Hartman.

5. An amendment relates back and forms part of the original complaint. (Lovenjana v. Carmillo, 45 Cal., 125; Bradford v. Andrews, 20 Ohio St., 208; Horton v. Banner, 6 Bush, 597; Hyatt v. Bank of Kentucky, 200.)

JUDGE HARGIS DELIVERED THE OPINION OF THE COURT.

In consideration of $60,000, payable in different installments, on or before March 7, 1866, R. M. Biggs, deceased, by written contract, sold and agreed to convey by general warranty deed, to Hartman and Coleman, five parcels of land, which were stated as "containing three thousand and seven hundred acres."

The writing embraced this stipulation : " The lands are to be surveyed, and if they run short, the said Biggs is to make a deduction in proportion, and if they overrun, the said H. and C. are to pay in proportion."

On the 24th of February, 1866, H. and C. solicited and accepted a quit-claim deed from Biggs and wife conveying to them four instead of five parcels of the land mentioned in the written contract, and acknowledging payment of the consideration.

By a similar deed, dated April 11th, 1866, Hartman and Coleman and *James M. Baily* conveyed said lands and some other small parcels to the Western States Coal, Oil, and Mining Company, in consideration of $249,000 in hand paid.

Thereafter, on the 15th of February, 1867, Biggs and wife executed a second deed to H. and C., with covenant of

general warranty, for the four parcels of land described in their deed of February 24th.

The Western States Coal, Oil, and Mining Company, by quit-claim deed, dated the 19th of February, 1869, conveyed the lands purchased by H. and C. from Biggs to the appellee, the Lexington and Big Sandy Railroad Company.

On the 30th of April, 1869, Hartman and Coleman and Baily, in writing, assigned and transferred to the appellee company *the warranties* contained in the deeds from Biggs to them, and all rights or causes of action they then or thereafter might have by reason of the breach of any of the *warranties* or *covenants* contained in Biggs' deed to them.

Biggs having been killed by the explosion of the boilers of the steam-boat Harry Dean, James L. Warring was, at the June term, 1868, of the county court, appointed his administrator.

On the 27th of October, 1868, the administrator filed his petition in equity to settle his intestate's estate, the personalty of which he alleged was insufficient to pay his debts.

He described the lands of the estate, prayed to have enough of them sold to pay the debts, and "that all claimants be enjoined and restrained . . . of all suits and proceedings on any of their demands, *except by proceeding herein.*"

November 2, 1869, the appellee company filed a petition setting forth a claim for a large deficit in the lands deeded by Biggs to Hartman and Coleman, whom it joined in the petition by their alleged consent.

It based its claim to the value of the deficit on the above-named assignment to it by Hartman and Coleman. The suit progressed until November 13th, 1871, when Hartman and Coleman appeared, and on their motion had the cross-

petition of the appellee company discontinued as to them, and they were dismissed as plaintiffs in said cross-petition.

On the 28th of October, 1873, they joined the appellee company in an amended petition, alleging that they were dismissed as plaintiffs in the petition seeking to recover for the deficiency, "upon the idea that said cause of action was vested in the Lexington and Big Sandy Railroad, Eastern Division," and asked "to be reinstated as co-plaintiffs in the petition setting up the claim."

They were accordingly reinstated as co-plaintiffs with the railroad company.

During that term of court the appellants, the administrator, widow, and heirs of Biggs, filed an amended answer, pleading in apt language the statute of five years' limitation to the cause of action for the alleged deficit.

Upon hearing the cause, the court below rendered judgment in favor of the appellee company against the appellants for the sum of $19,400, with interest from the 24th of February, 1866, for the deficiency, which was adjudged to be 1,197½ acres, and they have appealed to this court asking a reversal of that judgment.

There are several imposing grounds urged by appellants for a reversal upon the merits of the case, but none of them will be considered in this opinion, as the plea of limitation in our judgment presents a complete bar to the recovery for what deficit soever there may be.

The general principle of law authorizing an action for compensation for a material deficit in lands sold under a. mistake as to the quantity was long since well established, but the right of recovery greatly depends upon the nature of the purchase, the circumstances, knowledge, and conduct of the parties.

This right of action is based upon the contract which the law implies as the result of justice and reason growing out of the mutual mistake of innocent parties, and is barred by the lapse of five years from the discovery of the mistake, if payment be made before that event. (Dye v. Holland, 4. Bush, 636.) Payment and the discovery of the mistake must concur before a recovery can be had.

Under the rule that, at the instant the cause of action accrues, limitation begins to run, it starts on its course from the moment of payment, as the cause of action then accrues; but our statute and adjudications restrain its operation upon the cause until the mistake shall be discovered, if that occurs within ten years after the contract.

Here the mistake was discovered in June, 1867.

From the death of Biggs to the appointment of his administrator, and for six months thereafter, less than one year expired.

Deduct that period from the time which elapsed from the discovery of the mistake to the reinstatement of Hartman and Coleman as plaintiffs, and it will be seen that more than five years and four months are left, which sustains the plea of limitation, unless the cause of action had been assigned to the appellee company by Hartman and Coleman, or if not assigned, they were obstructed in their right to sue by the injunction obtained at the commencement of the administrator's suit to settle his intestate's estate.

The unambiguous language contained in the paper evidencing the assignment must control this question, as neither fraud nor mistake in its execution is sufficiently shown by the evidence, and without such evidence, parol testimony is incompetent for the purpose of contradicting or explaining it.

The assignment specifically transfers the benefit of the warranties and covenants contained in Biggs' deeds, and any cause of action that had or might accrue by reason of their breach.

Neither of the deeds contains any warranty of *quantity*. The lands are described in them by metes and bounds, and "supposed to contain in the whole thirty-seven hundred acres, be it more or less."

It is true that any cause of action arising on the warranties would run with the land and pass by similar deeds, but the action to recover compensation for the deficit could not arise from the breach of any warranty or covenant in either of the deeds named, for the simple reason that there is no undertaking or warranty in them that the lands contained the quantity mentioned.

Besides, this court has held too often that the remedy for a deficit, where such deeds as these exist, is based on an implied assumpsit to refund the money paid by mistake that results from ignorance, accident, or confidence. (Crane v. Prather, 4 J. J. M.; Dye v. Holland, 4 Bush; Young v. Craig, 2 Bibb; Harrison v. Talbott, 2 Dana, and cases therein cited.)

The cause of action, therefore, on the implied promise to render compensation for the deficit, remained with Hartman and Coleman, as no assignment thereof to the appellee company is shown to have been made.

Whether they can be allowed to deduct any time by reason of the grant of the injunction at the instance of the administrator, and thus reduce the period below the requisite of the statutory bar, is the only remaining question of importance urged by counsel that need be touched.

While the British authorities relied on to sustain appellee's view go far to support it, yet the English chancery practice, formed under the influence of English statutes and institutions, has never been fully adopted in this state. Counsel contend that section 12, article 4, chapter 71, General Statutes, is conclusive of this point.

A part of that section reads:

"When . . . the commencement of an action is stayed by injunction, the time of the continuance of the injunction is not part of the period limited . . . for the commencement of the action."

In point of fact, were this section applicable to the question before us, we hardly see how Hartman and Coleman have placed themselves within its protection against the lapse of time pleaded. For they appeared in connection with the railroad company, and actually asserted the claim on November 2d, 1869, and afterwards voluntarily abandoned its prosecution until October 28th, 1873. Certainly the commencement of their action was not stayed beyond the time at which they first presented it, and this did not result from the injunction, because it is alleged in their first pleading, that "the *delay* in presenting this claim arises from the facts that the company, petitioning only within a few months past, became entitled to the right herein asserted," and that Hartman and Coleman resided in Pennsylvania.

And there is no evidence in this record that shows they were laboring under the mistaken belief that the injunction would be violated by their instituting a suit on the claim in the action brought by the administrator.

The prosecution of suit upon their claim in this action was embraced in the exception stated in the prayer of the administrator's petition, which, in effect, asked that all claimants

be not only permitted but required to prosecute their claims in the proceedings for the settlement of the estate.

The injunction granted did not stay appellee's action; it only prescribed where and how he should institute it.

The power to grant such an injunction is given by the 436th section of the Civil Code, and its provisions are founded on principles of equality and justice, and is intended to prevent a multiplicity of suits where one will furnish a remedy to all parties who may be interested.

In the case of Barnes, &c., v. Green, &c., MS. Opin., September, 1881 (by Judge Pryor), this court sustained the plea of limitation where an injunction had been granted against suits of creditors at the instance of the administrator, on his filing a petition for settlement of the estate.

With these views of the law of this case, the exclusion and admission of evidence specified in the assignment of errors was prejudicial to the appellants' rights, and forms a reversible error, as the court might and ought, with the illegal evidence excluded and the relevant evidence admitted, to have rendered judgment rejecting the claim for the deficit on the plea of limitation.

As the plea of limitation is fatal, we are constrained so to decide, and forego an adjudication upon the merits of the controversy.

Wherefore, the judgment is reversed, and cause remanded, with directions to sustain the plea of limitation and dismiss appellee's cross-petition.