\*GARLAND   v.   AURIN.

(*Knoxville.*   November 18, 1899.)

1. EASEMENT.   *Drainage of surface water.*

A landowner, whether in country or city, has an easement for drainage of surface water in its natural flow over the lower lands of a neighboring owner, and if the latter places an obstruction of any character upon his land that arrests this drainage, and thereby causes injury to the former, an action lies for the damages.

Cases cited: Carriger v. Railroad, 7 Lea, 388; Railroad v. Hays, 11 Lea, 382; Railroad v. Mossman, 90 Tenn., 157.

2. ACTION.   *Maintainable by occupant of lot.*

The occupant of a town lot or other lands, whether he is the owner in fee, a life tenant, or a lessee, if injured in his possession by the wrong of another—*e. g.*, by the obstruction of his natural drainage of surface water over the lower lands of a neighboring proprietor—may recover damages for the injury done, the amount of damages to be measured by the injury to his particular estate or interest in the property.

3. SAME.   *Same.*

Although a pond, from which noxious vapors are emitted, causing sickness to plaintiff, is situated on his own premises, he may, nevertheless, maintain an action, for the damages thus sustained, against the neighboring landowner, whose wrongful act, in obstructing the natural flow of surface water across his premises, had created the pond.

4. PROXIMATE CAUSE.   *Averment of.*

It is not essential to aver, in direct terms, that defendant's wrongful act was the natural and proximate cause of plaintiff's

---

\*The authorities on the question as to rights in respect to the flow of surface water are carefully reviewed in a note to Gray v. McWilliams (Cal.), 21 L. R. A., 593.

injury.  It is sufficient if, from the facts averred, it appears substantially and as a necessary inference that plaintiff's injury resulted from defendant's wrongful act.

FROM KNOX.

Appeal in error from Circuit Court of Knox County.  J. W. Sneed, J.

Ingersoll & Peyton for Garland.

Green & Shields for Aurin.

Caldwell, J.  This is an action of damages, brought by the occupant of a city lot against the owner of an adjacent and lower lot for creating an alleged private nuisance by filling such lower lot with earth, garbage, etc., and thereby obstructing the natural drain of surface water, and backing the same upon plaintiff's lot, and there making a stagnant pond, which impaired the use of the premises, and, through noxious vapors emitted, caused sickness to the plaintiff.  The defendant demurred upon four grounds: First, that being within the city limits, the defendant had the legal right to fill or raise his lot, as it is alleged he did, though he thereby impeded and prevented the passage of surface water from the plaintiff's lot over his own; second, that plaintiff, being only

Garland *v.* Aurin.

the occupant and not the owner of the lot alleged to have been injured, cannot maintain this suit; third, that since the noxious vapors complained of are alleged to have risen from the lot occupied by the plaintiff, and not from that of defendant, there is no cause of action on account thereof against the defendant; and, fourth, that the plaintiff does not allege that the wrongs complained of were the natural and proximate cause of her sickness.

Two distinct rules have been administered in the various States of the Union with respect to the right of a lower proprietor to obstruct and repel surface water flowing from the land of a higher proprietor—one being called the common law rule and the other the civil law rule. Under what is known as the common law rule, the holding is that the right of the lower proprietor to occupy and improve his land in such manner and for such purposes as he may see fit, either by changing the surface or by the erection of buildings or other structures thereon, is not restricted or modified by the fact that such improvements or occupation will obstruct and repel surface water that would otherwise naturally flow thereon from adjacent and higher land, even though the land of the upper proprietor may be injured thereby.

This rule is based largely upon the maxim, *"Cujus est solum, ejus est usque ad coelum et*

*ad infernos,*" and seems to be administered in the States of Connecticut, Indiana, Kansas, Maine, Massachusetts, Minnesota, Missouri, New Hampshire, New Jersey, New York, and perhaps in Texas (except as to railroads), Vermont, and Wisconsin.

On the contrary, by the rule of the civil law, the proprietor of the lower land may not obstruct, by any means, the natural flow of surface water, and turn it back, to the injury of the higher lands of his neighbor, the latter owner having, by the law of nature, an easement or servitude of drainage over the lands of the former for the flow of surface waters. This rule is based partly upon the necessity of the situation and partly upon the maxim, "*Sic utere tuo ut alienum non laedas,*" and appears to prevail in Arkansas, Alabama, California, Georgia, Illinois, Iowa, Kentucky, Louisiana, Maryland, Michigan, Nevada, North Carolina, Ohio, Pennsylvania, Tennessee, Texas (as to railroads), Virginia, and West Virginia.

There have seemingly been some changes from one rule to the other in Arkansas, Missouri, Iowa, New Hampshire, and some of the other States; and South Carolina appears to occupy a kind of middle ground between the two, allowing the lower owner to make any reasonable use of his land which may not unreasonably injure adjacent property above.

The two rules are considered, and most of the adjudged cases cited, in 24 Am. & Eng. Enc.

Law, pp. 907 to 922, inclusive; in *Gray* v. *McWilliams* (Cal.), 21 L. R. A., 593, 608, and note; in *Sheehan* v. *Flynn* (Minn.), 26 L. R. A., 632, and note; in *Vanderwiele* v. *Taylor,* 65 N. Y., 341, 345; in *Barclay* v. *Wilcox,* 86 N. Y., 141; in *Waverly* v. *Page* (Iowa), 40 L. R. A., 465, and note; and in Cooley on Torts, pp. 574 to 580, inclusive.

Judge Dillon, adopting the remark of Lord Tenterden (*Rex* v. *Commissioners,* 8 B. & C., 355, 360), in reference to the rights of owners along the seacoast, says that the law largely regards surface waters a common enemy, which every proprietor may fight or get rid of as best he may. 2 Dillon Mun. Corp. (4th Ed.), Sec. 1039.

The cases decided by this Court are: *Carriger* v. *Railroad Co.,* 7 Lea, 388; *Railroad Co.* v. *Hays,* 11 Lea, 382; and *Railway Co.* v. *Mossman,* 90 Tenn., 157. All of these cases give distinct recognition and application to what is called the civil law rule, without so naming it or mentioning the other rule.

In the first of them the following language was quoted and adopted from Addison on Torts (Woods' Ed.), p. 95, viz.: "Land cannot be cultivated or enjoyed unless the springs which rise on the surface and the rains that fall thereon be allowed to make their escape through the adjoining and neighboring lands. All lands, therefore, are of necessity burdened with the servitude of receiving and

discharging all waters which flow down to them from lands on a higher level, and if the owner or occupier of the lower lands interposes artificial impediments in the way of the natural flow of the water through or across his lands, and by so doing causes the higher lands to be flooded, he is responsible in damages for infringing the natural right of the possessor of such higher land to the natural outflow and drainage of the soil, unless he has gained a right to pen back water by contract, grant, or prescription. So that if the proprietor of the higher lands alters the natural condition of his property, and collects the surface and rainwater together at the bottom of his estate and pours it in a concentrated form and in unnatural quantities upon the land below; he will be responsible for all damages thereof caused to the possessor of the lower lands."

Judge Cooley, after noting the fact that some of the States apply the one rule and some the other, says that "no doubt all the States would recognize an exception (to the civil law rule) in favor of the owner of a town lot, who must be at liberty to cut off drainage across it, or his lot would be worthless for many purposes. In respect to agricultural lands, strong reasons may be given for either view, and it is probable that each will continue to find supporters hereafter as heretofore." Cooley on Torts, 577.

Elsewhere it is said: "In some States a dis-

Garland *v.* Aurin.

tinction has been made between urban and rural property, and it has been held, or, at all events, an opinion has been expressed, that the rule of the civil law that the lower proprietor holds his land subject to the burden of receiving the surface water which naturally drains from the higher land, does not apply to city and village lots." 24 Am. & Eng. Enc. Law, 915. In support of the last statement, the author | cites cases from Alabama, Iowa, Michigan, and Pennsylvania (four of the States in which the civil law rule prevails as to rural lands), and two cases from New York (one of the States in which the common law rule prevails). In a later case from Iowa, however, (*Waverly* v. *Page,* 40 L. R. A., 465), the civil law rule was applied in favor of the owner of a city lot, and that, too, as against the municipality itself; and the same rule seems to have been applied as to urban property in Georgia (*Goldsmith* v. *Elsas,* 53 Ga., 186), in Illinois (*Ghormley* v. *Sanford,* 52 Ill., 159), in Kentucky (*Kemper* v. *Louisville,* 14 Bush, 84), in Louisiana (*Bowman* v. *New Orleans,* 27 La. Ann., 501), in Virginia (*Smith* v. *Alexandria,* 33 Gratt., 208), and in other States.

We are unable to see any difference in principle between the reciprocal rights and duties of adjacent urban proprietors and those of adjacent rural proprietors; and hence we do not think it

wise to apply one rule to city lots and a different rule to agricultural lands, especially in the same State.

Having heretofore, in the three cases mentioned, determined the rights of adjacent rural proprietors by the civil law rule, and still deeming that the better doctrine, we now apply it to urban lots, and in doing so overrule the first ground of demurrer.

As to the second ground of demurrer, it need only be said that the rightful occupant of a lot, whether he or she be owner in fee, life tenant, or lessee, if injured in his or her possession by the wrong of another, may recover damages for the injury done, that damage to be measured by the injury to his or her particular estate or interest in the property.

If it be true, as averred in the declaration, that the defendant wrongfully caused noxious vapors to rise on and from the plaintiff's lot, and that she was injured thereby, the defendant is liable therefor, the same as if such vapors had been wrongfully caused to rise on and from his own lot. Hence the third ground of demurrer is not well taken.

The remaining assignment of demurrer is likewise bad, because it was not incumbent on the plaintiff to aver in terms that the wrongs of the defendant were the natural and proximate cause of

Garland *v.* Aurin.

her sickness.    It was sufficient on this point to aver that the wrongful creation of the stagnant pond by the defendant caused the ill health suffered by the plaintiff.

Reverse and remand.